William Bard and Erma Bard, et al. [1] v. Commissioner. Bard v. Commissioner
Docket Nos. 3969-63, 3709-64, 3710-64. .
United States Tax Court
T.C. Memo 1966-213; 1966 Tax Ct. Memo LEXIS 72; 25 T.C.M. (CCH) 1107; T.C.M. (RIA) 66213; September 28, 1966
*72 1. Held, that the notice of income tax deficiency issued to petitioners William F. and Erma Bard for their taxable year 1959 was timely issued. 2. Held, that an automobile auction sale business known as Tollway Auto Auction, was not owned or operated by petitioner William Bard during the year 1959; and that, accordingly, he and his wife are not entitled to deduct any loss in respect of said business for said year. 3. Held further, that said Tollway Auto Auction was owned and operated as a partnership during the year 1959, by petitioners Thomas H. Sullivan and Edwin E. Bard as the copartners thereof; and that each of said petitioners is entitled to deduct for said year his distributive share of the loss sustained by said partnership in its operations of said year. The amounts of partnership losses so deductible are determined. Allan Smietanka, 105 W. Adams St., Chicago, Ill., and Joseph Smietanka, for the petitioners in Docket No. 3969-63. Thomas H. Sullivan, pro se, in Docket No. 3709-64. Edwin E. Bard, pro se, in Docket No. 3710-64. Myron Weiss, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The Commissioner determined deficiencies in the income taxes of the several petitioners herein, as follows: Taxable
Docket
calendar
Defi-
No.
Petitioner
year
ciency
3969-63
William F. Bard and
Erma Bard
1959
$7,463.50
3709-64
Thomas H. Sullivan
1959
684.92
3710-64
Edwin E. and Esther
Bard
1956
1,856.05
1957
206.24 All of the cases were consolidated for trial. The issues for decision are - In the case of William F. and Erma Bard: (1) Whether the notice of deficiency to said petitioners was timely issued. (2) Whether the Commissioner erred in disallowing a deduction to said petitioners for a 1959 loss alleged to have been sustained by William F. Bard in his alleged operation of a business known as Tollway Auto Auction. In the cases *74 of Thomas H. Sullivan and of Edwin E. and Esther Bard: (3) Whether the Commissioner erred in disallowing a deduction to each of said petitioners for a portion of a loss alleged to have been sustained in 1959 by an alleged partnership operated by Edwin E. Bard and Thomas H. Sullivan, as claimed copartners, under the partnership name of Tollway Auto Auction. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. Petitioners William F. Bard and Erma Bard are husband and wife residing in Chicago, Illinois. They filed a joint Federal income tax return for their taxable year here involved with the district director of internal revenue at Chicago. Petitioner Thomas H. Sullivan is a resident of Evergreen Park, Illinois. He filed an individual income tax return for his taxable year here involved, with the district director of internal revenue at Chicago. Petitioners Edwin E. Bard and Esther Bard are husband and wife who resided during their taxable years here involved in Oak Lawn, Illinois. They filed a joint Federal income tax return for each of said taxable years with the district *75 director of internal revenue at Chicago. Petitioners William F. Bard and Edwin E. Bard are brothers. Their wives are involved in this proceeding solely by reason of their having joined with their husbands in the filing of their above-mentioned joint income tax returns. For convenience, William F. Bard will hereinafter sometimes be called "William"; Edwin E. Bard will hereinafter sometimes be called "Edwin"; and Thomas H. Sullivan will hereinafter sometimes be called "Sullivan." Facts Re Issuance of Notice of Deficiency to William F. and Erma Bard The joint income tax return of William F. and Erma Bard for their taxable year 1959 here involved, was filed on April 15, 1960. Thereafter on February 2, 1963, said petitioners executed and filed with the district director of internal revenue at Chicago a Consent Agreement (Form 872) in which they agreed with said director that the period for assessment and collection of any income tax for their taxable year 1959 was extended to December 31, 1963. The Commissioner's notice of deficiency in the income tax of said petitioners for their taxable year 1959 was issued to said petitioners on July 17, 1963, which was within the period of limitation *76 for their taxable year 1959, as extended by the above-mentioned Consent Agreement. Facts Re Organization and Operation of Tollway Auto Auction William, during the period from about 1950 through 1958, owned and operated a business for the sale of automobiles at auction, which was known as Arena Auto Auction. Edwin, who is William's brother, was engaged in an oil compound business in Chicago during this same period. The brothers were at that time very friendly, and they helped one another financially and otherwise in business matters. In 1958 William sold his Arena Auto Auction to persons not involved in the instant case. As part of said sale transaction William agreed with the buyers that he would not participate in the operation of any automobile auction business in the Chicago area for a period of 5 years from the time of said sale. Thereafter in about May 1959, Edwin and Sullivan, acting in accordance with a suggestion of William, orally agreed to join as partners in establishing and operating a new automobile auction business similar to that in which William had previously engaged, and to divide equally the profits and losses from the operation of such business. On May 16, 1959, Sullivan *77 acting on behalf of said partnership signed a real estate sale contract with Mae Binkowski, a widow, for the purchase from her of approximately 17 acres of land located in the Village of Alsip in the Chicago area - which land was to be used by the partnership as its site for the new auto auction business that they planned to operate under the name of Tollway Auto Auction. The purchase price of said land, as provided in the contract, was $45,000; and the seller acknowledged receipt of $1,000 earnest money at the time the contract was executed. Thereafter in June 1959, Sullivan delivered to the seller a cashier's check in the amount of $24,000. Also at about this same time Edwin and Sullivan delivered to the seller their installment promissory note in the amount of $20,000, which represented payment of the balance of the purchase price of said real estate. Thereupon said seller executed and delivered to Edwin and Sullivan, as the grantees, a warranty deed for said real estate dated June 1, 1959. As security for payment of the above-mentioned promissory note, Edwin and Sullivan and their respective wives conveyed and warranted unto the Chicago Title and Trust Company as trustee on June 1, 1959, the *78 real estate above mentioned. The first installment on the above-mentioned promissory note in the amount of $460.59 was paid by Sullivan to the seller on about August 1, 1959; and the balance due on said installment note was fully paid on October 1, 1959. In connection with the purchase of the above real estate (hereafter called the Tollway property) the seller petitioned for and obtained from the Village of Alsip, where the property was located, a rezoning of the property for an automobile auction business. Edwin paid $50 to the Zoning Board with respect to the above proceeding. Shortly thereafter the Village of Alsip issued a permit for construction of the new building on said Tollway property. In payment for this building permit, Sullivan issued his check for $537.42 to the Village. Shortly after the issuance of the building permit, the construction of the building was commenced. The layout of the building was suggested by William; and the architectural plans were then prepared in the name of Edwin. In connection with the improvement of the property, chain fencing was ordered, and various equipment and office furniture were purchased or leased. Also arrangements were made with *79 public utilities for supplying light and heat for the premises. Most of the aforementioned arrangements for the business were made either by Edwin or Sullivan. In about July 1959, Edwin sold for a price of $22,000 the oil compound business in which he had been engaged for many years. The funds which he obtained from the sale, including amounts received from discounting a promissory note received in part payment of the sale price, were used by him to make contributions to the Tollway partnership and to pay various amounts owed by said partnership. On August 13, 1959, Sullivan executed and delivered to the First National Bank of Evergreen Park, Illinois, a so-called "partnership agreement" on behalf of the Tollway Auto Auction, in which it was certified that Edwin and Sullivan were the sole owners of the business operated by them as copartners under the partnership name above mentioned. Also in this same instrument, the bank was authorized to pay checks drawn by either Edwin or Sullivan against moneys deposited in the bank to the account of Tollway Auto Auction. On or about September 2, 1959, Edwin and Sullivan borrowed $100,000 from the Michigan Avenue National Bank in Chicago, *80 in order to finance the construction of buildings on the Tollway property. As security for payment of said sum, Edwin and Sullivan and their respective wives executed a mortgage to the Chicago Title and Trust Company covering the Tollway real estate. Also at this same time, for the purpose of enabling Edwin and Sullivan (who were designated as "Debtor") to obtain credit from time to time from said Michigan Avenue Bank, William executed and delivered to this bank an instrument in which he requested the bank "to extend to said Debtor such credit as the Bank may deem proper," and in which he (William) "guaranteed full and prompt payment to said Bank * * * of any and all indebtedness, liabilities and obligations" of said Debtor to the bank. As security for such guaranty, William and his wife executed a trust deed to the Chicago Title and Trust Company, covering their personal residence property. On or before September 23, 1959, another checking account in the name of Tollway Auto Auction was opened in the Michigan Avenue Bank; and on September 25, 1959, Sullivan issued his personal check upon the Chatham Bank of Chicago for $18,000, which was made payable to Tollway Auto Auction and *81 was then deposited in this new checking account. Edwin, Sullivan, and the bookkeeper of Tollway were all authorized to draw checks on said account on behalf of Tollway. Tollway began the operation of its business in about the middle of November 1959; and shortly prior thereto, printed announcements of a grand opening were issued to the public by both Edwin and Sullivan who therein represented that they were the copartners of the Tollway business. About a week later Edwin and Sullivan, again designating themselves as the owners of Tollway Auto Auction, mailed "flyers" to auto dealers announcing the progress made on the opening day of Tollway. Still later, in December 1959, they sent printed Seasons Greetings to customers, which greetings were signed in the name of Tollway Auto Auction by "Tom Sullivan and Ed Bard, Owners." Under dates of December 17, 1959, and January 20, 1960, respectively, the certified public accounting firm of Ziegler, Shifris and Company certified to Tollway Auto Auction that it had examined the books and records of said business for the months of November and December 1959, without making an audit of the transactions. It attached to said certification, a "Statement *82 of Financial Condition" and a "Statement of Results of Operations," prepared by it as of the close of each of said months. The statements thus prepared for the month ended on December 31, 1959, showed in substance, among other things, the following: Partnership Equity
T. Sullivan
E. Bard
Total
Balance, November 1, 1959
$33,560.12
$34,548.00
$68,108.12
Less - drawings to 12/31/59
2,000.00
2,000.00
4,000.00
$31,560.12
$32,548.00
$64,108.12
Less loss for year ended 12/31/59
14,504.98
14,504.98
29,009.96
Balance, December 31, 1959
$17,005.14
$18,043.02
$35,098.16
On or about April 11, 1960, a U.S. Partnership Return of Income (Form 1065) of Tollway Auto Auction for its calendar year 1959, was filed with the Internal Revenue Service by Edwin as a partner of said firm. In this return there was reported a loss from the operation of the business for said year in the amount of $29,009.96, which is the same amount that was shown on the above-mentioned Statement of Financial Condition as of December 31, 1959. Said partnership return also showed the names of the partners and their respective shares of said loss to be as follows: Edwin E. Bard
$14,504.98
T. Sullivan
14,504.98
Total
$29,009.96
*83 On February 29, 1960, Edwin and Sullivan sent a letter to William which stated in substance: (1) That Edwin and Sullivan, as owners of the business operated by them under the name of Tollway Auto Auction, offered to sell and transfer to William all the assets of said business, including the real estate; (2) That the consideration therefor would be: The assumption by William of all liabilities of the "partnership of the undersigned [Edwin and Sullivan] doing business as Tollway Auto Auction"; the release by William of Edwin and Sullivan from all their obligations to the Michigan Avenue National Bank; and the payment by William to them of an amount equal to the capital investments of Edwin and Sullivan in said business as of the time of the sale - which amount would be paid as follows: $2,500 to be paid in cash to each of Edwin and Sullivan at the time of the sale; and the balance of the difference between said cash payments and the amounts of their investments in the business to be paid by delivery to Edwin and Sullivan of certain non-interest bearing promissory notes of William. William thereupon accepted the above offer, by signing his name below the word "Accepted" at the *84 end of said letter. Thereafter on March 3, 1960, a formal written agreement embodying the substance of the above sale agreement was executed by Sullivan and Edwin and their respective wives (therein called the "Sellers"), and by William (therein called the "Buyer"). Shortly thereafter Sullivan and Edwin sent letters to their creditors in which they stated in substance, that: The partnership under which they had theretofore been doing business as Tollway Auto Auction, had been dissolved; that said business had been purchased from them by William Bard who had assumed and would pay all existing liabilities of said business; and that they would not be liable or responsible for any liabilities incurred in the future by persons using the name of Tollway Auto Auction. Subsequently on March 14, 1960, the "Tollway Employees" sent a written statement to customers of Tollway, in which they stated that William Bard had become the new owner of Tollway. In the joint income tax return which William and his wife filed for the year 1959, William claimed a deduction for a loss alleged to have been incurred by him in the operation of Tollway Auto Auction during the year 1959. The Commissioner, *85 in his notice of deficiency to William and his wife, disallowed the entire amount of said claimed deduction on the ground that William had not established that he was entitled to the same. Sullivan in his income tax return for 1959 and Edwin in the joint return which he and his wife filed for the year 1959, each claimed a partnership loss equal to 50 percent of the loss shown in the 1959 partnership return of Tollway; and Edwin and his wife also claimed net operating loss carrybacks to the years 1956 and 1957. The Commissioner in the notices of deficiency issued to Sullivan and to Edwin and his wife, disallowed not only both of the abovementioned claimed deductions for partnership losses, but also the net operating loss carrybacks claimed by Edwin and his wife. Opinion The issues in this case are primarily issues of fact; and the burden of establishing any errors in the Commissioner's determinations respecting said issues is upon the petitioners. The testimony of William Bard on the one hand, and of Edwin Bard and Thomas Sullivan on the other hand, not only reflects the existence of a bitter controversy between these two groups of petitioners, but also includes numerous conflicting *86 statements of fact and unsupported conclusions of the petitioners in each group. Furthermore, the accounting records of Tollway Auto Auction other than certain bank checks, were claimed to be missing at the time of trial, notwithstanding that the same had previously been examined by a revenue agent on the premises of William Bard. In this circumstance, we have very carefully examined, considered and weighed all of the evidence herein, including the stipulation of facts; and as the result of such examination and consideration, we have made the following ultimate findings of fact and the following holdings: Re Case of William F. Bard and Erma Bard. (1) We here find as an ultimate fact and here hold, that the notice of deficiency which the Commissioner issued to William F. and Erma Bard for the taxable year involved, was properly and timely issued within the period permitted by the Internal Revenue Code of 1954. Accordingly, we further hold: That this Court has jurisdiction to decide the present case of said petitioners; and also that the time for assessment and collection of any deficiency in the income tax of said petitioners for their taxable year 1959 is not barred by the statute *87 of limitations. We decide this first issue in favor of the respondent. (2) Regarding the second issue, William's contention is in substance, that he was during the year 1959 the sole "silent owner" and operator of the business known as Tollway Auto Auction; that Edwin and Sullivan were merely employees or agents of his, who provided a "facade" for his "silent" ownership and operation of said business; and that he (William) is the only one entitled to the benefit of any loss sustained in the operation of said business during the year 1959. We regard this contention of William to be without merit. The evidence herein does not establish, in our opinion, that William was the sole "silent owner" and operator of said business during said year 1959; or that Edwin and Sullivan were or acted as employees or agents of William in the operation of said business; or that William actually invested any capital in said business during or prior to the year 1959. It is true that William did make certain arrangements with the Michigan Avenue National Bank, pursuant to which he guaranteed to said bank the repayment of any loans which the bank might make to Edwin and Sullivan in accordance with said *88 arrangements. However such acts of William did not constitute the investment by William of capital in the Tollway business; and William's guarantee to the bank merely created a guarantor's contingent liability for repayment by him of any loans made by the bank to Edwin and Sullivan which might thereafter become delinquent. Moreover, William's action in agreeing in 1960, to purchase from Edwin and Sullivan at that time (which was subsequent to the taxable year here involved) all the business assets of Tollway Auto Auction for an amount equal to the sum of said sellers' capital contributions to the business and the assumption of all liabilities incurred by said sellers in the operation of said business prior to the time of said purchase - indicates, in our opinion, that William did not become the owner of said business until after his purchase of that business from Edwin and Sullivan during the subsequent year 1960. We hold that William has not borne the burden of establishing any error in the determinations made by the Commissioner in the notice of deficiency which he issued to William and his wife for the year here involved. We hereby approve said determinations of the Commissioner; *89 and we decide this second issue in favor of the respondent. Re Cases of Thomas H. Sullivan and of Edwin E. and Esther Bard. Based on our above-mentioned consideration and weighing of all the evidence herein, we here find as an ultimate fact and hold that the business of Tollway Auto Auction during the year 1959 was owned and operated by Thomas H. Sullivan and Edwin E. Bard, as equal copartners thereof; and that Sullivan and Edwin as such partners are each entitled to deduct one-half of the loss sustained by their said partnership in the operation of its business during the year 1959. As regards the amount of loss sustained by said Tollway Auto Auction from its 1959 operations, the respondent has on brief requested this Court to find as a fact, that the amount of loss sustained by Tollway Auto Auction during the year 1959 was $22,940.22 (which amount reflects a downward revision of the loss shown by the certified public accounting firm in its abovementioned statement of the partnership's operations). Petitioners Sullivan and Edwin have indicated in their briefs, that they accept said revised amount of the partnership loss which the respondent suggested. Accordingly, we here find *90 as a fact and hold that the amount of loss sustained by Tollway Auto Auction in its operations for its calendar year 1959 was $22,940.22. Regarding the amounts of the adjusted bases of Edwin and Sullivan of their respective interests in Tollway Auto Auction as of December 31, 1959, we find and hold that such basis of each of said petitioners was in excess of his distributive share of the partnership loss which we have hereinabove found. Accordingly we here find and hold that the limitation on the allowance of partners' losses contained in section 704(d) of the 1954 Code [2] has been met by each of said partners; and that Edwin and Sullivan each is entitled to deduct for the year 1959, his distributive share of the partnership's loss as of the end of said year. We also hold that Edwin and his wife are entitled to any carrybacks to their taxable years 1956 and 1957, which the recomputation of tax herein may reveal to be properly allowable. We decide this third issue in favor of petitioners Edwin E. and Esther Bard and of petitioner Thomas H. Sullivan. Decision will be entered for the respondent in Docket No. 3969-63. Decisions will be entered under Rule 50 in Docket Nos. 3709-64 and *91 3710-64. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Thomas H. Sullivan, Docket No. 3709-64, and Edwin E. Bard and Esther Bard, Docket No. 3710-64.↩
2. SEC. 104. PARTNER'S DISTRIBUTIVE SHARE. * * *
(d) LIMITATION ON ALLOWANCE OF LOSSES. - A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. * * *↩